IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANETH MURILLO,<br><br>        Plaintiff,<br><br>    vs.<br><br>JOSEPH E. KITTELSON, Norfolk P&DC Postmaster; BRIAN HAKE, Norfolk P&DC Plant Manager; JEFFREY GILLOTTI, Assistant Manager; and MEGAN J. BRENNAN, USPS Postmaster Gral. and CEO,<br><br>        Defendants. | **8:19CV571**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court for an initial review of Plaintiff's pro se, in forma pauperis Complaint (Filing No. 1)[1] to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

I. SUMMARY OF COMPLAINT

Plaintiff is employed by the United States Postal Service ("USPS") and works at a post office facility in Norfolk, Nebraska. She is suing the Postmaster General, the local postmaster, and two supervisors. Her statement of claim is as follows:

> The enclosed 50 pages[2] of documentation generated by claimant are self-explanatory—Joseph E. Kittelson [Norfolk postmaster], Brian

---

[1] The Complaint was prepared using the court's standardized "Complaint for a Civil Case" form. Based on Plaintiff's allegations, use of the court's standardized "Complaint for Employment Discrimination" form would be more appropriate.

[2] Actually, there are 60 pages of attachments to the Complaint, which consist primarily of correspondence dated from September 4, 2019, to December 23, 2019.


> Hake [manager], and Jeffrey Gillotti [assistant manager] continue to harass, retaliate, humiliate, and threaten claimant; according to Joseph E. Kittelson neither District nor Executive Mgmt. are interested in reading or hearing what I have to say—claimant has been ordered to communicate only with Kittelson or his subordinate Shyuan Jasper or a so-called MPO only. Claimant cannot longer tolerate the abuse she has been forced to endure since December 2015.

(Filing No. 1, p. 4.) Plaintiff seeks to recover an award of damages, stating:

> Claimant basis for claiming that the wrongs alleged are continuing at the present time are clearly stated in the enclosed documents. Punitive and exemplary damages in the amount of $90,000; the mental, emotional, psychological and physical pain caused by the defendants could've been prevented but instead the fabrications, threats, harassment, discrimination, retaliation and abuse by local mgmt. fully supported by mgmt. at the area district and executive mgmt. have driven claimant to the brink of nervous and mental breakdown.

(Filing No. 1, p. 4.) In support of this requested relief, Plaintiff further states:

> The extreme mental emotional and psychological unusual pain caused by the irresponsibility, ineptness, intentional cruelty and harm done to plaintiff during the past 90 days could've been prevented by local, district executive USPS management but they have chosen to knowingly and voluntarily ignore plaintiff's numerous calls for corrective action; instead, as has been happening since 2015, plaintiff is being retaliated and discriminated against.

(Filing No. 1, p. 4.)

---

Plaintiff has also made three supplemental filings: Filing No. 6 (3 pages), filed on January 8, 2020; Filing No. 7 (117 pages), filed on March 16, 2020; and Filing No. 8 (72 pages), filed on May 11, 2020. Filing No. 8 (at pages 1-2) includes a request for an order authorizing discovery, which will be denied without prejudice. As explained in the court's General Order No. 2016-02 (Filing No. 4), discovery will not take place unless and until this pro se case is allowed to proceed to service of process, all defendants have answered, and the court has entered a progression order.

Plaintiff's Complaint was filed on December 31, 2019. The court takes judicial notice that a related action, *Murillo v. U.S. Postal Service*, Case No. 8:19CV262 (D.Neb.),[3] was filed on June 18, 2019, and, as the result of a settlement agreement, was voluntarily dismissed with prejudice in September 2019,[4] prior to the court reviewing Plaintiff's pro se pleadings in that case to determine whether summary dismissal was appropriate.

It appears from Plaintiff's Complaint and attachments in the previous case that Plaintiff was served with a notice of removal on or about June 2, 2018, notifying her that she would be removed from her Postal Service employment after 30 days for unacceptable conduct. (Case No. 8:19CV262, Filing No. 1, pp. 4, 6-9.) It further appears Plaintiff filed a grievance and requested arbitration, but was not permitted to work after July 1, 2018. (*Ibid.*, pp. 4, 11-31.)

The notice of dismissal recites that on August 27, 2019, at an arbitration hearing, USPS "agreed to put Plaintiff back to work this time as a regular career employee" and to "schedule Plaintiff to go back to work and commence work at the beginning of the payroll cycle of September 14, 2019." (Case No. 8:19CV262, Filing No. 6.) In exchange, "Plaintiff agreed to withdraw the pending legal action in Federal Court against [USPS]." (*Ibid.*)[5]

---

[3] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.*

[4] Plaintiff filed an unsigned notice of dismissal on September 4, 2019. A signed notice was received and filed on September 16, 2019. The court entered judgment dismissing the case with prejudice on September 17, 2019.

[5] In the present action, Plaintiff refers to events dating back to 2015. The dismissal of the previous action with prejudice may prevent Plaintiff from litigating claims that were raised, or could have been raised, in that action. *See Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) ("A claim will be held to be precluded by a prior lawsuit when: (1) the first suit resulted in a final judgment on

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d

---

the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."); *United States v. Bala*, 948 F.3d 948, 952 (8th Cir. 2020) (doctrine of *res judicata* (or claim preclusion) bars both what was raised and what could have been raised in the previous action).

4

912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Also, a pro se litigant "is not excused from complying with procedural rules, including Federal Rule of Civil Procedure 8, which requires a short and plain statement showing the pleader is entitled to relief, and that each allegation in the pleading be simple, concise, and direct." *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (unpublished per curiam) (citation omitted). The primary purpose of Rule 8 is to allow the court and the opposing party to understand whether a valid claim is alleged and, if so, what it is; the complaint must be sufficiently clear so the court or the opposing party is not required to keep sifting through it in search of what it is the plaintiff asserts. *Id.* (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 775-76 (7th Cir. 1994)). "A litigant cannot ignore her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks." *United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992); *see Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 79-80 (1st Cir. 2014) ("While we are certainly sympathetic to the challenges pro se plaintiffs may face in filing a lawsuit on their own, it is not our job, in an effort to ferret out the adequacy of a plaintiff's pleaded allegations, to haphazardly mine documents appended to a complaint.").

### III. DISCUSSION OF CLAIMS

Liberally construing Plaintiff's Complaint and its attachments, she is claiming that USPS discriminated against her because of her sex (female), age (62), race (Hispanic), or national origin (naturalized U.S. citizen), that she was harassed and subjected to a hostile work environment, and that she was retaliated against for complaining about such discrimination and harassment.

These claims arise under the federal-sector provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees … in the United States Postal Service … shall be made free from any discrimination based on race, color, religion, sex, or national origin."), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a) ("All

personnel actions affecting employees … who are at least 40 years of age … in the United States Postal Service … shall be made free from any discrimination based on age."). Although neither federal-sector provision mentions "retaliation," a USPS or other federal employee who is a victim of retaliation due to the filing of a complaint of discrimination under Title VII or the ADEA may assert a claim for retaliation. *See Byer v. Wilkie*, No. 4:17CV3160, 2019 WL 4858435, at *3 (D. Neb. Oct. 2, 2019) (citing *Gomez-Perez v. Potter*, 553 U.S. 474, 479, 487-88 & n. 4 (2008)); *cf. Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) ("We assume without deciding that it is unlawful for a federal agency to retaliate against a civil servant for complaining of discrimination."). It has also been held that a federal employee can bring a hostile work environment claim based on actions that do not include ultimate employment decisions. *See Daniel v. U.S. Dep't of Homeland Sec.*, No. CV 15-3628, 2016 WL 5800983, at *6 (E.D. La. Oct. 5, 2016); *see also Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (sexual harassment claim based on hostile work environment).

The only proper defendant for Plaintiff's Title VII claims is the Postmaster General. *See* 42 U.S.C. § 2000e-16(c) ("[T]he head of the department, agency, or unit, as appropriate, shall be the defendant."); *Ramirez v. Postmaster Gen.*, No. 4:04CV3258, 2005 WL 8176038, at *1 (D. Neb. Mar. 11, 2005). The ADEA does not specify who must be named as a proper party defendant in an age discrimination case, but the ADEA federal-sector provision has been construed consistently with the Title VII provision to require that suit be brought against the Postmaster General. *Gillispie v. Helms,* 559 F.Supp. 40 (W.D.Mo. 1983); *Ellis v. U.S. Postal Serv.*, 784 F.2d 835, 838 (7th Cir. 1986); *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986); *Williams v. Bolger*, 861 F.2d 267 (4th Cir. 1988); *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988).

Plaintiff does not purport to sue Defendants in their individual capacities, nor would this be permissible under Title VII or the ADEA. These statutes only impose liability upon employers, not individual supervisors or co-workers. *Bartunek v. eFrame, LLC*, No. 8:16CV69, 2016 WL 5854215, at *1 (D. Neb. Oct. 6, 2016) (citing cases).

An employment discrimination complaint does not need to contain specific facts establishing a prima facie case to survive a motion to dismiss for failure to state a claim. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510-12 (2002), *overruled in part on other grounds by Twombly,* 550 U.S. 544. The elements of a prima facie case are relevant to a plausibility determination, however. *See Blomker*, 831 F.3d at 1056; *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim").

In her Complaint, attachments, and supplements, Plaintiff "use[s] buzzwords like discrimination, retaliation, and hostile work environment as broad, catch-all terms for her claims," *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020), but factual support is lacking.

## A. Discrimination

To establish a prima facie case of discrimination under Title VII, Plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, that similarly situated employees outside the protected class were treated differently). *See Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination); *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (race discrimination); *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012) (national origin discrimination).

To establish a prima facie case of discrimination under the ADEA, Plaintiff must show: (1) she is over 40; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) substantially younger, similarly situated employees were treated more favorably. *See Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010).

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014). "Such action 'might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects' but '[m]inor changes' are not enough." *Id.* (quoting *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 954-55 (8th Cir. 2011)); *see Bowen v. Methodist Fremont Health*, No. 8:19CV270, 2020 WL 1904832, at *4 (D. Neb. Apr. 16, 2020). "To be 'adverse,' an employment action must do more than merely make an employee unhappy, but it need not always involve termination or even a decrease in benefits or pay." *Brown v. Cox*, 286 F.3d 1040, 1045 (8th Cir. 2002) (quoting *Duffy v. McPhillips,* 276 F.3d 988, 992 (8th Cir. 2002)); *see Clark v. Sarpy Cty.*, No. 8:17CV405, 2020 WL 1820269, at *6 (D. Neb. Apr. 10, 2020).

Plaintiff does not allege that she suffered an adverse employment action, and the attachments and supplements to Plaintiff's Complaint do not indicate that she has lost any pay or benefits, or that her job duties and responsibilities were changed to her detriment. See *Rester*, 739 F.3d at 1131 ("[The plaintiff] suffered no termination, did not lose pay or benefits, and her job duties or responsibilities did not change. Thus, she cannot establish a prima facie case of gender discrimination."); *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) ("[The plaintiff] did not establish a prima facie case of sex and race discrimination or retaliation because she cannot show, as a matter of law, that she suffered an adverse employment action. She suffered no termination, cut in pay or benefits, or changed job duties or responsibilities.") (citing *Wilkie,* 638 F.3d at 955). In fact, Plaintiff was converted from a part-time postal support employee to a full-time career employee in September 2019, pursuant to the settlement agreement that led to her voluntary dismissal of Case No. 8:19CV262.[6]

---

[6] Plaintiff complains she should have been converted to a full-time employee one year earlier, and argues she should be paid at a higher hourly rate, as if the conversion had occurred in September 2018. (Filing No. 1, p. 17.) Plaintiff also complains she did not receive benefits when she returned to work in September 2019. (Filing No. 1, p. 20.) However, no discriminatory or retaliatory conduct is alleged to have caused the pay differential or lack of benefits.

8

B. Hostile Work Environment

Title VII and the ADEA make it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, …." 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). This language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' … includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (quoting *Jackman*, 728 F.3d at 804). "This demanding standard requires extreme conduct rather than merely rude or unpleasant conduct." *Rester*, 739 F.3d at 1131 (internal quotations and citation omitted).

"More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Blomker*, 831 F.3d at 1057; *see Byer*, 2019 WL 4858435, at *27. "Relevant factors for determining whether conduct rises to the level of harassment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016) (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011)).

The harassment must be both objectively and subjectively offensive. *Peterson v. Scott Cnty.*, 406 F.3d 515, 523-24 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1059 (8th Cir. 2011). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively

9

perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22.

"Hostile work environments created by supervisors or coworkers have the following elements in common: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006) (citing *Al-Zubaidy v. TEK Indus., Inc.,* 406 F.3d 1030, 1038 (8th Cir.2005)); *E.E.O.C. v. CRST Van Expedited, Inc.,* 679 F.3d 657, 683 (8th Cir. 2012). "In addition, for claims of harassment by non-supervisory personnel, [a plaintiff] must show that [her] employer knew or should have known of the harassment and failed to take proper action." *Id.* (citing *Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir. 1999)).

Plaintiff obviously finds the conduct of her co-workers and supervisors to be offensive, and, as evidenced by the numerous, lengthy attachments and supplements to Plaintiff's Complaint, she lodges written complaints on almost a daily basis, but the incidents of which she complains have no apparent relationship to her age, sex, race, or national origin. "[A]nti-discrimination laws do not create a general civility code." *Kelleher*, 817 F.3d at 634 (quoting *Ryan v. Capital Contractors, Inc.,* 679 F.3d 772, 779 (8th Cir. 2012)).

### C. Retaliation

To establish a prima facie case of retaliation, an employee must show: "(1) she engaged in protected conduct; (2) she suffered materially adverse employment action, action that would deter a reasonable employee from making a charge of employment discrimination or harassment; and (3) the materially adverse action was causally linked to the protected conduct." *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1077-78 (8th Cir. 2010).

The Eighth Circuit has held that "ostracism and disrespect by supervisors [does] not rise to the level of an adverse employment action." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999). Likewise, "ostracism by co-workers is not an adverse employment action and cannot, without more, be the foundation for a retaliation claim." *Id.* (affirming dismissal of Title VII retaliation claim). Plaintiff's allegations in this case fail to show a materially adverse employment action.

Plaintiff's allegations also fail to show a causal connection between any protected activity on her part and the conduct of which she complains. "One element of this type of claim is causation: any adverse employment action must have been *motivated by* [the employer's] desire to retaliate against him for reporting discriminatory and harassing behavior." *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1136 (8th Cir. 2020) (emphasis in original; internal quotation marks and citations omitted).

Many of Plaintiff's workplace complaints concern safety violations, employee misconduct, mismanagement, and other issues that cannot reasonably be categorized as involving discrimination or harassment. To the extent Plaintiff is alleging that she has been retaliated against for reporting these matters, no actionable claim is stated. While the Whisteblower Protection Act makes it a "prohibited personnel practice" for a government agency to take adverse personnel action against an employee because of that employee's disclosure of information which the employee reasonably believes evidences a violation of any law, rule, or regulation, 5 U.S.C. § 2302(a), (b)(8)(A)(i), that Act has no application here.

A personnel action may be considered a "prohibited personnel practice" only if it occurs within an "agency" as that word is defined in the statute. The definition of "agency" in 5 U.S.C. § 2302(a)(2)(C) does not include the United States Postal Service, which is specifically excluded from the generally applicable definition of "executive agency" in 5 U.S.C. § 105 by virtue of its exclusion from the definition of "independent establishment" in 5 U.S.C. § 104. *See Booker v. Merit Sys. Prot. Bd.,* 982 F.2d 517, 519 (Fed. Cir. 1992). "Where Congress intended the Postal Service to be included within the definition of 'agency' or to be subject to particular provisions of Title 5, it explicitly so provided. Its absence from the section 2302

11

definition could only have been intentional in light of this congressional practice." *Id.* (citations omitted). Plaintiff, as a Postal Service employee, cannot bring an action under the Act based on whistle blowing activities. *See Eastman v. Donahoe*, No. 4:10CV906 FRB, 2011 WL 5374729, at *5-6 (E.D. Mo. Nov. 8, 2011).

### D. Damages

Plaintiff alleges she has suffered mental anguish and emotional distress, and she seeks to recover $90,000.00 in punitive (or exemplary) damages.

Under Title VII, a plaintiff may recover an award of compensatory damages for emotional distress, but such an award must be supported by competent evidence of "genuine injury." *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 865 (8th Cir. 2010); *Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 531 (8th Cir. 1999). Title VII also authorizes an award of punitive damages upon a showing of malice or reckless indifference, but the applicable statutory provision expressly precludes punitive damages for "government agencies." 42 U.S.C. § 1981a(b)(1). Because USPS is a government agency for purposes of Title VII, it is exempt from punitive damages. *See Robinson v. Runyon,* 149 F.3d 507, 516 (6th Cir.1998); *Baker v. Runyon,* 114 F.3d 668, 671-72 (7th Cir. 1997); *Bunda v. Potter*, 369 F. Supp. 2d 1039, 1049 (N.D. Iowa 2005); *Dotson v. Donohoe*, No. 4:11-CV-1820 NAB, 2013 WL 171025, at *2 (E.D. Mo. Jan. 16, 2013).

The ADEA does not permit an award of emotional distress damages. *Maschka v. Genuine Parts Co.*, 122 F.3d 566, 573 (8th Cir. 1993). Also, although the ADEA does allow the recovery of liquidated damages where the employer's violation is willful,[7] it does not provide for the recovery of punitive damages. *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 729 (8th Cir. 1992); *see Mills v. Hastings*

---

[7] The statute refers to liquidated damages as an additional amount equal to the "amounts owing to a person as a result of a violation." 29 U.S.C. § 626(b). Thus, the award of liquidated damages in an ADEA case is a doubling of the back-pay award. *Ryther v. KARE 11*, 864 F. Supp. 1525, 1528-29 (D. Minn. 1994). Plaintiff is not claiming she is entitled to any back pay in this case.

*Utilities*, No. 4:18-CV-3149, 2019 WL 1877077, at *3 (D. Neb. Apr. 26, 2019); *Harmel v. Terry Hughes Tree Serv., Inc.*, No. 8:18CV401, 2018 WL 6573153, at *1-2 (D. Neb. Dec. 13, 2018); *see also Forster v. Deere & Co.*, 925 F. Supp. 2d 1056, 1062 (N.D. Iowa 2013) ("[E]motional distress damages and punitive damages are not recoverable under the ADEA, whether the claim is one of discrimination or retaliation.").

### E. Exhaustion of Administrative Remedies

A postal employee must exhaust applicable administrative remedies before commencing a Title VII action in federal court. *Patrick v. Henderson*, 255 F.3d 914, 915 (8th Cir. 2001). To properly exhaust, a complainant must initiate the EEO pre-complaint process "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1)). If the matter is not informally resolved, the EEO counselor notifies the complainant of her right to file a formal administrative complaint. *See* § 1614.105(d). The complainant must file her formal written complaint within 15 days after receiving the counselor's notice. *See* § 1614.106(b). A civil action may be filed in federal district court within 90 days after receipt of the agency's final action on the complaint or the EEOC's final decision on an appeal, or after 180 days from date of filing the complaint or appeal). *See* § 1614.107; 42 U.S.C. § 2000e-16(c). In the absence of waiver, estoppel or equitable tolling, the failure of an employee to meet these time limitations bars further action on the claims. *See Bailey v. United States Postal Serv.,* 208 F.3d 652, 655 (8th Cir. 2000).

Under the ADEA, an aggrieved federal employee has two alternative routes for pursuing a claim of age discrimination. *See Stevens v. Department of Treasury,* 500 U.S. 1, 5 (1991). The employee may invoke the EEOC's administrative process in the same manner as a Title VII claim and then file a civil action in federal district court if she is not satisfied with her administrative remedies. *See* 29 U.S.C. § 633a(b) and (c). A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. She can decide to present the merits of his claim to a federal court in the first instance. *See* § 633a(d).

13

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted. However, the court will allow an Amended Complaint to be filed within 30 days, in which event the court will conduct another initial review. If an Amended Complaint is not filed within 30 days, this action will be dismissed.

The Court will require Plaintiff to use the court's standardized "Complaint for Employment Discrimination" form when preparing her Amended Complaint. In the "Statement of Claim" section on the court-supplied form, Plaintiff should write a short and plain statement describing each type of discrimination claim, hostile work environment claim, and retaliation claim she is asserting. For example, Plaintiff should describe in separate paragraphs any adverse employment action she suffered because of her age, sex, race, or national origin; she should also identity whether conduct she perceives as creating a hostile work environment was because of her age, sex, race, or national origin; and for her retaliation claims, she should allege what protected activity she engaged in and what adverse action she believes was taken as a result of that protected activity.

As stated in the court-supplied form, Plaintiff may attach additional pages for the purpose of describing the facts of her case, but she should not attach copies of any additional documentation (such as correspondence) to the Amended Complaint.

The Amended Complaint will supersede, rather than supplement, Plaintiff's existing pleadings. In other words, the Amended Complaint must stand on it own, and the court will disregard Plaintiff's existing Complaint and attachments (Filing No. 1), as well as her supplemental filings (Filing Nos. 6, 7, and 8), when reviewing the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).

IT IS THEREFORE ORDERED:

1. On the court's own motion, the Plaintiff shall have 30 days in which to file an Amended Complaint using the court's standardized "Complaint for Employment

Discrimination" form. Failure to file an Amended Complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff.

      2. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after Plaintiff addresses the matters set forth in this Memorandum and Order.

      3. The clerk of the court is directed to send Plaintiff a "Complaint for Employment Discrimination," Form Pro Se 7 (Rev. 12/16).

      4. The clerk of the court is directed to set a pro se case management deadline in this case using the following text: July 16, 2020: Check for Plaintiff's Amended Complaint.

      5. Plaintiff's motion for discovery (Filing No. 7) is denied without prejudice.

      Dated this 16th day of June, 2020.

      BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge